**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

Nos. 95-50776, 95-50816
(Summary Calendar)
_____

KAY BRINKLEY, Administratrix,
Administratrix of the Estate of
Carroll Eugene Brinkley on behalf of
Kay Brinkley, James Brinkley and Eula
Christine Brinkley, Kay Brinkley, as
Administratrix, on behalf of the Estate
of Carroll Eugene Brinkley, deceased,

                                        Plaintiff-Appellant,

versus

CULBERSON COUNTY HOSPITAL
DISTRICT,

                                        Defendant-Appellee.

(consolidated with)

KAY BRINKLEY, Administratrix,
Administratrix of the Estate of
Carroll Eugene Brinkley on behalf of
Kay Brinkley, James Brinkley and Eula
Christine Brinkley, Kay Brinkley, as
Administratrix, on behalf of the Estate
of Carroll Eugene Brinkley, deceased,

                                        Plaintiff-Appellant,

versus

CULBERSON COUNTY HOSPITAL
DISTRICT, ET AL

                                        Defendants,

STEPHANIE WILLIAMS, R.N.

---

Appeal from United States District Court
for the Western District of Texas
(P-94-CV-21)

---

August 12, 1996

Before JOLLY, JONES and STEWART, Circuit Judges.

PER CURIAM:[*]

Brinkley appeals the separate grants of summary judgment to Culberson County Hospital

("Culberson") and Stephanie Williams, R.N. ("Williams").  Finding no error, we AFFIRM.


FACTS

Carroll Eugene Brinkley, a truck driver, was feeling very sick on May 23, 1992.   He parked

his rig at a Chevron Truck Stop and gave a hand-written note to the attendant.  The note read:

> I am a truck driver
> Cannot speak @ this time
> Please take me to Hospital
> C.E. Brinkley.

In addition to indicating that his throat felt paralyzed, that he was having trouble swallowing, and was

choking on saliva, Brinkley also complained that he was having trouble breathing.

A deputy sheriff took Brinkley to the emergency room of the Culberson County Hospital,

where he was seen by registered nurse Stephanie Williams.  Williams noticed that Brinkley was

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published
and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

hyperventilated, and she calmed him down. Williams observed and examined Brinkley, and phoned her findings in to the doctor on call, Bill C. Lipsey. Dr. Lipsey did not come to the hospital. He apparently had Williams test Brinkley's oxygen level, which was normal. Based on Williams observations, the doctor apparently diagnosed Brinkley as having an acute sore throat and swollen glands, and had Williams administer several medications. Brinkley was discharged and went back to his rig. He was found dead in his rig's sleeping compartment the next morning. His death certificate listed the immediate cause of death as respiratory arrest which resulting from airway obstruction caused by an acute inflammation of the larynx. Based on diversity jurisdiction, Mrs Brinkley[1] filed for wrongful death and survivorship in the appropriate federal district court. Dr. Lipsey settled and is no longer part of this case.

The district court granted Culberson County Hospital summary judgment, and later dismissed Williams as well. Brinkley appeals, listing three issues. Brinkley argues (1) that the district court erred in granting summary judgment to Culberson, (2) that it abused its discretion by granting that summary judgment instead of granting plaintiff's voluntary motion for partial dismissal of Culberson, or that it should have ruled on the voluntary dismissal prior to considering the summary judgment motion, and (4) that the district court erred in granting summary judgment to Williams.

### DISCUSSION

In reviewing a grant of summary judgment, the Appellate Court applies the same standard as the District Court. *Waltman v. International Paper, Co.*, 875 F.2d 468, 474 (5th Cir. 1989). Summary judgment is properly granted against a party who, after adequate time for discovery and upon motion, fails to make a showing sufficient to establish the existence of an element essential to

---

[1]For simplicity's sake, hereafter "Brinkley" will be used to refer to either Mr. or Mrs. Brinkley.

3

that party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 202 (1986). It shall be rendered where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must demonstrate the absence of a genuine issue of material fact. If he meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir., 1993)*(citing Celotex*, 447 U.S. at 325).

### *I. Grant of Summary Judgment to Culberson*

The district court granted summary judgment to Culberson because it found that Brinkley's summary judgment evidence did not rebut the assertion that she was barred from suit for failure to fulfill the notice requirements of the Texas Tort Claims Act. The Texas Tort Claims Act provides in pertinent part:

> (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
>
> (1)    the damages or injury claimed;
> (2)    the time and place of the incident' and
> (3)    the incident ....
>
> . . . .
>
> © The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

TEX. CIV. PRAC. REM. CODE. ANN. §101.101.

4

The Texas Supreme Court has held that, in order for a plaintiff's tort claim to survive summary judgment , §101.101 requires that the governmental unit must have actual notice of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved. *Cathey v. Booth*, 900 S.W. 2d 339, 341 (Tex. 1995).

As summary judgment evidence, Culberson submitted a copy of a letter sent by Brinkley's attorney within the six-month period, as well as affidavits of the hospital administrator, Nicholas Blythe, and the hospital's Custodian of Records, Dora Valenzuela, attesting that neither construed the letter as anything other than a request for medical records. The letter informs Culberson that attorney Paul Petty

> . . . represents Mrs. Kay Brinkley in conjunction with the death of her husband, Mr Carroll Brinkley. It is my understanding that Mr. Brinkley was seen in your Emergency Room on May 23, 1992.
>
> Please provide my office with all of Mr. Brinkley's medical records relating to the above-referenced service date. I am enclosing a medical authorization for your file.

Brinkley presented parts of Blythe's and Valenzuela's depositions as well as Petty's letter and medical authorization, and letters from the insurance company Penobscot Group and the Bureau of Veterans' Affairs. The medical authorization that was attached to Petty's original letter provided that the hospital, its physicians and medical attendants are authorized to furnish full and complete medical reports and information to Petty, "especially any and all medical reports concerning the injuries received as a result of an accident which occurred on the 24th day of May, 1992. This authorization also includes examination of all hospital records, x-ray film, and furnishing any information including

5

opinions, which will aid my attorney in the prosecution of claims against insurance carriers and others responsible for the injuries sustained."

The letter from the insurance company is dated three months after the incident, and asks for records of the hospital's treatment and release of Brinkley for respiratory problems, it does not mention any claim of medical malpractice. The Veterans' Affairs Department letter is dated October 31, 1992, five months after Brinkley's treatment. It states that the primary cause of death was listed as respiratory arrest, and asks for a copy of the terminal hospital summary and autopsy protocol in conjunction with Mrs. Brinkley's claim for death benefits. Like the Penobscot letter, it does not mention medical malpractice or any culpability on Culberson's part. In the reproduced portion of Blythe's deposition testimony, Blythe stated that upon learning that a patient treated the night before had been found dead in his truck, he asked the staff about his treatment and release. Though he did not remember the specifics of any conversations, he believed that he would have remembered more had he been at all concerned that Mr. Brinkley had received less than reasonable care. He testified that he was not aware through formal written notice or otherwise that the hospital might have any possible culpability or responsibility with regard to Brinkley's death. That opinion was consistent with his answers to other of Brinkley's attorney's questions. Valenzuala's deposition excerpts similarly make no showing that the hospital had any knowledge that Brinkley's widow intended to sue the hospital for malpractice.

Brinkley argues that the affidavits submitted by Culberson are self-serving and conclusory, and did not constitute competent summary judgment evidence. She does not provide any authority for this statement, especially necessary as Rule 56© specifically includes affidavits as admissible for summary judgment purposes. Moreover, those affidavits are fully in accord with the deposition

6

excerpts submitted by Brinkley herself.   Brinkley further argues that the letter from the Department of Veteran Affairs requesting terminal hospital summary and autopsy protocol should be interpreted as further conveying to the hospital its possible culpability.  The letter says that Mrs. Brinkley is trying to collect death benefits, thus it is asking for proof that Brinkley died and what caused his death.   It does not indicate in any way that the hospital's failure to properly treat Brinkley led to his death.  As her final argument, Brinkley argues that  the district court's summary judgment apparently rests on its finding that Blythe's testimony and affidavit were credible.  Brinkley asserts that Blythe's testimony is unbelievable because any hospital administrator should have been very concerned about possible medical malpractice claims when presented with facts such as those surrounding Brinkley's death.   Brinkley further argues that it was error for the district court to make any kind of credibility determination on summary judgment.  Brinkley posits that the jury as a trier of fact should determine whether or not Blythe's testimony was believable or not, given the circumstances.   Likewise, she argues that the jury and not the trial court should determine whether or not it is a reasonable inference from the facts known to the hospital that Culberson had knowledge of its possible culpability and therefore "actual notice."

While factual controversies are resolved in favor of the nonmoving party for summary judgment purposes, they are so resolved only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air*, 37 F.3d at 1075.  This court, however, in the absence of any proof, does not assume that the nonmoving party could or would prove the necessary facts. *Id.* Moreover, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Id.*, 37 F.3d at 1075-76, citing *Armstrong v. City of Dallas*, 997 F.2d 62

7

(5th Cir. 1993). The evidence presented by Brinkley on summary judgment does not contradict Culberson's evidence, rather it confirms it. The only place where Brinkley's evidence gave any possible hint that she intended to proceed with any suit is in the authorization letter. However, that letter does not anywhere indicate that she intended to hold Culberson responsible for her husband's death, unless one interprets the phrase "others responsible" as referencing the hospital. This is an unlikely interpretation. Notice of a malpractice claim as defined by the Texas Torts Claim Act is a material fact because without it, Brinkley's suit is barred by §101.101. Thus, because Brinkley failed to establish proper notice of her claim, and hence failed to establish a material fact, summary judgment was properly granted to Culberson.

## *II. Voluntary motion for dismissal*

Culberson argues that this court has no jurisdiction to consider this issue because Brinkley failed to designate or describe the issue or the underlying order dismissing the voluntary motion in its notice of appeal. "Where the appellant notices the appeal of a specified judgment only or a part thereof, . . . this court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal." *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627, 630 (5th Cir. 1994). However, this court does have jurisdiction where the appeal involves issues that are inextricably entwined with issues that have been properly raised. *NCNB Texas National Bank v. Johnson*, 11 F.3d 1260 (5th Cir. 1994). Here, because the denial of the voluntary dismissal is inextricably entwined with William's dismissal -- a decision from which Brinkley properly gave notice of appeal -- we have jurisdiction to consider that denial.

The standard of review for a trial court's failure to grant a voluntary motion for dismissal is abuse of discretion. *Phillips v. Illinois Central Gulf Railroad*, 874 F.2d 984, 986 (5th Cir. 1989). Brinkley's motion to dismiss Culberson without prejudice is governed by Fed. R. Civ. Proc. 41 (a)(2). Usually a court will grant a Rule 41 (a)(2) motion providing for a dismissal without prejudice unless the defendant will suffer clear legal prejudice, other than the prospect of a subsequent suit on the same facts. *Phillips*, 874 F.2d at 985. Such a dismissal would, however result in clear legal prejudice where a defendant would be stripped of an absolute defense to the suit. *Id.*, at 987. In *Phillips*, had the plaintiff been granted the voluntary dismissal, the defendant would have lost a statute of limitations defense. *Id.*, 874 F.2d at 985.

In this case, dismissal of Culberson as a governmental unit would have operated to strip defendant Williams of an absolute defense. Under Texas tort law, a judgment in an action or a settlement of a claim bars any action involving the same subject matter against the employee of the governmental unit whose act or omission gave rise to the claim. Tex. Civ. Prac. Rem. Code Ann. §101.106. If the district court had granted Brinkley's motion for voluntary dismissal, Williams would have been deprived of her absolute defense under §101.106. It would also have been an attempt to deprive Culberson of its absolute defense of lack of notice under §101.101. Therefore, the district court did not abuse its discretion in not granting Brinkley's motion to dismiss, and did not abuse its discretion by not considering that motion until after it had considered the motion for summary judgment filed previously by Culberson.

*III. Dismissal of Williams*

When the trial court granted summary judgment to Culberson, it refused to dismiss Williams, finding that dismissal was premature under *Thomas v. Oldham*, 895 S.W. 2d 352, 355 (Tex. 1995). Subsequently, the trial court found that, as Brinkley had not timely appealed the judgment for Culberson County, the *Thomas* requirements were fulfilled and allowed the §101.106 bar to take effect. Brinkley asserts that its appeal was timely, and thus dismissal of Williams under §101.106 was premature.

In *Thomas*, the issue was whether the §101.106 bar applied to bar suit against an alleged tortfeasor employee when suit against both the employer and the employee were brought concurrently and a judgment is rendered against the governmental employer. The Texas Supreme Court found that, under Texas procedure, a plaintiff's suit does not end with rendition of judgment, rather the parties may file various motions with the trial court, extending the trial court's plenary power for thirty days. *See Thomas*, 895 S.W. 2d at 356. The Court did not mention the effect of an appeal, but held that "a party's 'suit' or 'action' continues at least until the expiration of the trial court's plenary power over the proceeding." *Id.* As indicated by the Texas Court, the language of §101.106 does not require that the judgment rendered in connection with the claimant's claims against the governmental unit become final, or that the period for all appeals be exhausted: "[i]t does not require that the judgment against the governmental unit precede any judgment against the employee, or otherwise impose particular timing requirements." *Thomas*, 895 S.W. 2d at 355. The Court then found that because the judgments against the employers were rendered during the period in which the trial court retained plenary power over the actions against the employees, those actions were barred under § 101.106. The effect of the Court's holding is that a judgment deciding an action

against a governmental unit bars a concurrent suit against that unit's employee. The grant of summary judgment in favor of a governmental unit for failure to give it the required statutory notice, in conjunction with the provisions of §101.106, bars a concurrent suit filed against the employee. *Cox v. Klug*, 855 S.W. 2d 276, 280 (Tex. App. -- Houston [14th Dist.] 1993). Thus, in accord with *Thomas* and *Cox*, the §101.106 bar precluded suit against Williams from the time the trial court rendered the summary judgment dismissing Culberson. Accordingly, the district court's grant of summary judgments dismissing both Culberson and Williams is AFFIRMED.